## No. 10,255.

### FIRST NATIONAL BANK OF STRASBURG, ET AL. v. AMERICAN STATE BANK OF BRIGHTON.

Decided April 2, 1923.   Rehearing denied May 7, 1923.

Action for damages for conversion of mortgaged property.   Judgment for plaintiff.

### *Affirmed.*

1. CHATTEL MORTGAGE—*Sale—Consent of Mortgagee.* One who alleges consent of a mortgagee to the sale of mortgaged property, has the burden of proving the allegation.

2. APPEAL AND ERROR—*Evidence.* On review, the appellate court will view the evidence in the light most favorable to the party successful in the trial court.

3. CHATTEL MORTGAGE—*Consent to Sale of Property.* Evidence reviewed and held not to establish the contention that a mortgagee consented to the sale of mortgaged property.

4. *Sale—Ratification by Mortgagee.* In an action by mortgagee for the conversion of mortgaged property, the fact that he received a part of the proceeds from the sale of the property is not, as a matter of law, such ratification as would defeat his action.

5. *Sale—Ratification.* If a mortgagor sells the property without authority of the mortgagee, the latter may disavow the sale and retake the property, or he may ratify the sale and sue the mortgagor for the proceeds. Ratification of the sale is a material issue if' the mortgagee seeks to retake the property, but is not material in an action for conversion unless it amounts to estoppel by conduct.

6. *Sale—Identity of Property.* The contention in the case under consideration that there was no evidence that the property converted was included in the mortgage, overruled.

7. CONVERSION—*Chattel Mortgage Property.* The sale of mortgaged

property by the mortgagor in exclusion of the rights of the mortgagee works a default, and is a conversion of the property for which the mortgagee may maintain trover without demand.

8.  PRINCIPAL AND AGENT—*Conversion.* A principal is liable for any act of conversion committed by his agent within the scope of his authority.

9.  CHATTEL MORTGAGE—*Record—Notice.* The record of a chattel mortgage is constructive notice of the mortgage to all persons subsequently dealing with the property.

10.  CONVERSION—*Chattel Mortgage Property.* A creditor with notice of a crop mortgage, who receives a part of the crop in payment of his indebtedness for a previous year, is liable to the mortgagee for conversion.

11.  EVIDENCE—*Value of Property.* The price obtained at auction, is competent evidence of the value of property.

*Error to the District Court of Adams County, Hon. Samuel W. Johnson, Judge.*

Mr. LESLIE E. GREENE, Messrs. QUAINTANCE, KING & QUAINTANCE, for plaintiffs in error.

Mr. HARRY S. CLASS, for defendant in error.

MR. JUSTICE ALLEN delivered the opinion of the court.

THIS is an action by the holder of a chattel mortgage, for damages for the alleged conversion of the mortgaged property. There was a verdict and judgment for plaintiff, and defendants bring the cause here for review.

The plaintiff is The American State Bank of Brighton, a corporation. The defendants are The First National Bank of Strasburg, and Grover E. Totten, its cashier.

On or about March 31, 1920, one Milton F. Llewellyn executed and delivered to plaintiff a promissory note in the sum of $3,686.67, due December 1, 1920, and at the same time executed and delivered to plaintiff a chattel mortgage, to secure the payment of the note. The mortgage covered numerous items of personal property, including farming implements, harness, horses and cattle. It was recorded April 2, 1920. The plaintiff is also the holder of a note

and mortgage given by Llewellyn to one H. A. Van Dusen, on or about June 15, 1920, due October 1, 1920, in the sum of $760. The mortgage is upon horses, hogs, and "150 Acres of winter wheat."

The complaint alleges that during the month of November, 1920, Llewellyn and the defendants wrongfully sold and converted the mortgaged property. The answer of the defendants alleges that no property of the plaintiff was converted or sold by the defendants or either of them; that the sale was had with the knowledge and consent of plaintiff; and, that the sale was ratified by the plaintiff with full knowledge of the facts by accepting $1,200 from the proceeds of the sale. The plaintiff, in its replication, denies all the allegations of new matter in defendants' answer.

The jury found the issues for plaintiff and assessed its damages at $2,395.10, and judgment for that amount was afterwards entered.

The first contention of defendants, plaintiffs in error here, is that the judgment should be reversed because, as they claim, the plaintiff gave its consent to the sale of the mortgaged property.

In the court below, the defendants had the burden of proof upon the issue of plaintiff mortgagee's consent to the sale. *Longmont Farmers' M. & E. Co. v. Mulvaney,* 71 Colo. 215, 205 Pac. 525. On this review we are required to view the evidence in the light most favorable to the party successful in the trial court, in this case the plaintiff. *Carper v. Frost Oil Co.,* 72 Colo. 345, 211 Pac. 370.

The sale of the mortgaged property took place on November 15, 1920. As showing that plaintiff bank consented to the sale, the defendants point to a letter of plaintiff's cashier to the mortgagor, Llewellyn, dated September 25, 1920, wherein the writer thereof says:

"Note what you say about selling the cattle. The market is not of the best, but hope you will get a good price for your stock."

Our attention is also called to a letter of plaintiff to the mortgagor, written October 5, 1920, wherein plaintiff says:

"Let me know how soon you expect to move your wheat and when you will be selling some live stock."

This correspondence does not show consent to sell all of the mortgaged property at once, including the hogs and the farming implements, not mentioned in the above quoted letters. It does not even show consent to sell wheat and the live stock without first letting the plaintiff know of the contemplated sale. The mortgagor did not act on such consent, if it was ever given, but, more than a month following the last letter above mentioned, proceeded to offer for sale all, and sell nearly all, of the property mortgaged, without any previous notice to the mortgagee. At the trial the plaintiff's cashier testified that he did not give Llewellyn permission, at any time, to sell any of the mortgaged property. The evidence supports the verdict as to the issue of consent to the sale.

The defendants also claim that plaintiff ratified the sale. They had the burden of proof as to this issue also. There is evidence that on November 26, 1920, the mortgagor gave plaintiff his check on defendant bank for $2,000, and informed plaintiff of the sale. This check was returned short, and afterwards plaintiff received a check for $1,200, which was cashed and the proceeds retained by plaintiff. This was not, as a matter of law, such ratification as would estop plaintiff from suing for conversion. There is no evidence that plaintiff looked to the mortgagor for the proceeds of the sale, or ratified the same by taking new security, or estopped itself by delay. We quote with approval the following from *Farmer v. Bank of Graettinger,* 130 Iowa, 469, 107 N. W. 170:

'It is a further contention that as plaintiffs received a portion of the proceeds arising from the sale of the mortgaged property, and, as they retain the same since acquiring knowledge of the conversion, they have made their election to ratify and confirm the sale, and should not be allowed to recover in this action. There is no force

in this contention. It is not a case where the mortgagee is seeking to avoid a sale and recover back the specific property, * * *. It is an action for conversion, and a recovery cannot be defeated simply on proof of a retention of that portion of the proceeds paid to plaintiffs before knowledge of the conversion. To say otherwise would be to require plaintiffs to pay back the amount received in order to entitle them to sue and recover from the same party a like sum, and such additional sum as would amount to the value of their interest in the property converted."

If a mortgagor sells property without authority of the mortgagee, the latter may either disavow the sale and retake the property, or he may ratify the sale and sue the mortgagor for the proceeds. 5 R. C. L. 446. Ratification of the sale is a material issue in case the mortgagee seeks to retake the property, but in an action for conversion ratification is not material unless it amounts to estoppel by conduct. In the instant case, the evidence warrants the verdict, so far as concerns the question of acquiescence and ratification.

It is contended that there is no evidence that any property of plaintiff was converted, or sold. The mortgages held by plaintiff enumerate and fairly describe the items of property mortgaged. The mortgagor's sale was an auction sale, at which property of other persons was offered for sale. The articles and chattels described in the plaintiff's mortgages correspond to those shown to have been sold. The sale took place on the mortgagor's premises, where the mortgaged property was kept and agreed to be kept. There is no evidence that the property sold was not the property mortgaged.

The evidence is sufficient to support the judgment as to the issue of identity of property.

It is next claimed that there is no evidence that the defendants are guilty of conversion. Undoubtedly the evidence shows that the mortgagor was guilty. In *Ilfeld v. Ziegler,* 40 Colo. 401, 91 Pac. 825, we said.

"Where, as in the case in hand, the sale is an absolute one of the mortgaged property by the mortgagor in exclusion of the rights of the mortgagee, such sale itself works a default and is a conversion of the property for which the mortgagee may maintain trover without demand. Jones on Chattel Mortgages (4th ed.), § 460."

Other persons may be guilty at the same time.

"Every person is liable in trover who personally or by agent commits an act of conversion, or who participates by instigating, aiding, or assisting another, or who benefits by its proceeds in whole or in part." 38 Cyc. 2054.

The defendant Totten was a clerk at the mortgagor's auction sale, but that is not all. Out of the proceeds of the sale of the mortgagor's property, Totten took $1,914.52 and applied it in payment of the mortgagor's indebtedness to the defendant bank. He so testified, and did not say that the mortgagor directed him to so use the proceeds, that he used them in ignorance of the mortgagor's conversion, or otherwise show that the appropriation of the proceeds was under circumstances which would make him not guilty of conversion. Totten was the cashier of the defendant bank, and acted for the bank in the making of loans and collections. The bank was the mortgagor's creditor. It held a subsequent mortgage on the property involved in this case. As Totten's principal, it is liable for any act of conversion committed by him within the scope of his authority. 38 Cyc. 2056. Plaintiff's chattel mortgages were recorded. The record was constructive notice of the mortgages to all persons subsequently dealing with the property. 11 C. J. 539. It was constructive notice to the defendant bank, the creditor, if the bank had become a purchaser of the property. It was such notice to the bank when it stood by, allowed another to become a purchaser, and itself appropriated the proceeds. It has been held that a creditor, with notice of a crop mortgage, who receives a part of the crop in payment of his indebtedness for a previous year, is liable to the mortgagee for conversion. 11 C. J. 632.

The evidence is sufficient on the issue of conversion.

Instructions on constructive notice are complained of, but, for the reasons above stated, concerning that subject, we find no error in this respect.

Other instructions are complained of on the ground of not being based on any evidence, but in view of what has been said regarding evidence, we hold that the instructions were warranted by the evidence.

The following instruction is complained of:

"* * * The prices obtained for goods sold at auction may be proved as tending to show their fair actual value, and while this is not conclusive, it may be considered by you in arriving at the fair market value at the time of sale."

The price obtained at auction is competent evidence of the value of property. 10 R. C. L. 955, sec. 128; 22 C. J. 185, section 142. The instruction is correct. Plaintiffs in error appear to contend that such evidence alone is insufficient to sustain a verdict. If such is the contention, we do not agree with it. Evidence tending to prove the essential fact is sufficient. 23 C. J. 52, note 82 (c).

There is no error in the record. The judgment is affirmed.

MR. CHIEF JUSTICE TELLER and MR. JUSTICE BURKE concur.